### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

**REINHEART JOHNSON**,

                    Plaintiff,

v.                                      **MEMORANDUM OPINION AND ORDER**
                                        Civil File No. 06-2267 (MJD/SRN)

**WELSH EQUIPMENT, INC.**;
**DICKIE EQUIPMENT CO., INC.**;
**PARRISH TIRE COMPANY**;
**UNICON CONCRETE, INC.**;
**SYKES TRUCK & EQUIPMENT CO., INC.**;
**L & S TRUCK & BODY CO.**;
**JERRY D. OLSON**, formerly d/b/a
Jerry D. Olson and Company;
**BOTNO READY MIX, L.L.P.**, and
**NORTHWEST TIRE, INC.**,

                    Defendants.

---

Lori L. Barton, Paul D. Peterson and William D. Harper, Harper & Peterson, PLLC, Counsel for Plaintiff Reinheart Johnson.

W. Todd Haggart, Vogel Law Firm, Counsel for Defendant Jerry D. Olson.

Bradley J. Beehler, Morley Law Firm, Ltd., Counsel for Defendant Botno Ready Mix, L.L.P.

---

## I.      INTRODUCTION

This matter is before the Court on Defendant Jerry D. Olson's Motion to

Dismiss for Lack of Jurisdiction [Docket No. 55] and on Defendant Botno Ready

Mix, L.L.P.'s Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 73].

For the reasons set forth below, Plaintiff's claims are dismissed with respect to

Defendants Jerry D. Olson, Botno Ready Mix, L.L.P., and Northwest Tire, Inc.

## II.   FACTUAL BACKGROUND

### A.   Parties Involved and History of the Truck and Tire

On June 8, 2002, Plaintiff Reinheart Johnson sustained severe injuries

while driving a 1986 Mack cement mixer truck for his employer, Concrete Dakota,

Inc. ("Concrete Dakota").  (Am. Compl. ¶¶ 12-13.)  While Johnson was driving,

the front tire on the passenger side of the truck blew out, causing the truck to roll

on its top and then onto its side, skidding seventy-five yards.  (Id. ¶ 12.)  This

incident led to multiple serious and debilitating injuries.  (Id. ¶ 14.)  Olson is a

resident of North Dakota.  (Id. ¶ 1.)   The accident occurred in North Dakota. (Id.

¶ 12.)

The history of the tire that blew out on the 1986 Mack Model TM 600

cement mixer truck and the truck's previous ownership are components that tie

multiple defendants to the case.

On February 16 or 17, 1993, the truck was sold to Defendant Unicon

Concrete, Inc. ("Unicon"), of Durham, North Carolina, a concrete business.  (Am.

Compl. ¶¶ 5, 17.)  Bridgestone/Firestone manufactured the tire at issue during the

32nd week of 1995.  (Id. ¶ 15.)  The tire was retreaded by Defendant Parrish Tire

Company ("Parrish") in Yadkin, North Carolina in the 19th week of 1997, and

remounted on the Mack truck during the period of time that the truck was owned

by Unicon.  (Id. ¶ 16.)  Parrish is in the business of retreading tires and selling new and retreaded tires.  (Id. ¶ 4.)

On September 18, 1997, the truck, with the retreaded tire, was sold to Defendant Sykes Truck & Equipment Co., Inc. ("Sykes"), of Jonesboro, Arkansas, a business that sells new and used cement mixer trucks.   (Am. Compl. ¶¶ 6, 19.) On September 25, 1997, the truck was sold to Defendant L & S Truck & Body Co. ("L&S") of Osage Beach, Missouri, a seller of used cement mixer trucks.  (Id. ¶¶ 7, 20.)

Sometime in the fall of 1997, Defendant Dickie Equipment Co., Inc. ("Dickie"), became the owner of the truck.  (Id. ¶ 21.)   Dickie is a Florida corporation with its principal place of business in Minnesota and is engaged in the business of selling used cement mixer trucks.  (Id. ¶ 3.)

On November 12, 1997, Dickie sold the truck to Defendant Jerry D. Olson. (Am. Compl. ¶ 22.)  At that time, Olson owned and operated a construction and concrete company, known as Jerry D. Olson and Company, in Bottineau, North Dakota.  (Id. ¶ 22.)  Olson used the Mack truck in his ready mix business for three months during 1998 to haul ready mix concrete around the Bottineau area. (Olson Aff. ¶ 8.)

On April 14, 1999, Olson sold his company, including the truck, to Botno Ready Mix, L.L.P ("Botno").  (Am. Compl. ¶ 23.)  Botno is a North Dakota corporation with its principal place of business in North Dakota.  (Id. ¶ 9.)  Botno is in the business of manufacturing, transporting, and selling concrete.  (Id.) Botno used the truck as part of its ready mix business from September 1998 until

February 2001, and delivered concrete around the city of Bottineau.  (Mikkelson Aff. ¶¶ 4-5, 7.)

After Defendant Botno had used the truck in its concrete business for almost three years, Botno sold the truck to Defendant Welsh Equipment, Inc. ("Welsh"), of Dodge Center, Minnesota, on February 2, 2001.  (Compl. ¶ 24.) Welsh is in the business of selling used cement mixers.  (Id. ¶ 2.)

On March 14, 2001, Welsh sold the truck to Plaintiff Johnson's employer, Jamestown Ready Mix, Inc., (now known as Concrete Dakota) of Jamestown, North Dakota.  (Compl. ¶ 25.)

On June 8, 2002, Johnson was an employee of Concrete Dakota, Inc. (Compl. ¶ 13.)  Johnson was acting within the scope of his employment while driving on Highway 36 in North Dakota, three miles east of Woodworth, North Dakota.  (Id. ¶¶ 12-13.)  He was driving the cement mixer truck that was loaded with sixteen tons of cement.  (Id. ¶ 12.)  While Johnson was driving, the front tire on the passenger side of the vehicle blew-out, and the tire deflated, causing the truck to roll on its top and skid seventy-five yards on its side.  (Id.)  Johnson suffered serious and permanent injuries as a result of the incident.  (Id. ¶ 14.)

Sometime before the accident, Concrete Dakota had hired Defendant Northwest Tire, Inc. ("Northwest"), to inspect the tires of the vehicles owned and operated by Concrete Dakota.  (Compl. ¶ 27.)  Northwest made recommendations to the agents, representatives and employees of Concrete Dakota regarding use, repair and safety hazards of the tires on the company trucks.  (Id.)  Northwest is a

North Dakota corporation located in North Dakota in the business of selling and repairing new and used tires.  (Id. ¶ 10.)

Inspection of the tire after it blew out revealed that, at some unknown time prior to the accident; the tire had sustained a puncture, which had been repaired. (Compl. ¶ 26.)  Johnson does not know when the puncture and repair occurred or who owned the truck and tire at the time of the puncture and repair.  (Id.)

### B.    The Dispute

On June 6, 2006, Johnson filed suit in this Court based on diversity jurisdiction against Welsh, Dickie, and Parrish for negligence, negligent instruction and failure to warn, and strict liability.  At the time that the original Complaint was filed, Plaintiff's residence was diverse to that of all Defendants.

On February 28, 2007, Plaintiff and Defendants Welsh, Dickie, and Parrish, through their respective counsel, entered into a Stipulation to Amend the Pleadings to Join Additional Parties.  The stipulation and proposed Amended Complaint were electronically filed the same day.  On March 2, 2007, with permission of Magistrate Judge Sue Ann Nelson, Johnson filed an Amended Complaint.  [Docket No. 36].  The Amended Complaint alleges Count One: Negligence against all Defendants; Count Two: Negligent Instruction and Failure to Warn against Parrish, Welsh, Dickie, Sykes, and L&S (but not Unicon, Olson, Botno, or Northwest); Count Three: Strict Liability: Sale, Warnings and Instructions against Parrish, Welsh, Dickie, Sykes, and L&S (but not Unicon, Olson, Botno, or Northwest).  As recited in the Amended Complaint, Jerry D. Olson is a North Dakota resident, Jerry D. Olson and Company was located and

had its principal place of business in North Dakota, Botno Ready Mix is a North Dakota corporation, and Northwest Tire, Inc. is a North Dakota corporation. Plaintiff's state of residence is the same as that of Defendants Olson, Botno, and Northwest.

Parrish then filed cross claims against all Defendants, including Olson and Botno.  [Docket No. 37].  Welsh also filed cross claims against all Defendants.  [Docket No. 39].  Northwest filed cross claims against all Defendants.  [Docket No. 42].  Sykes filed cross claims against all Defendants.  [Docket No. 43].  L&S filed cross claims against all Defendants.  [Docket No. 44].  Finally, Botno filed cross claims against all Defendants.  [Docket No. 71].

On May 14, 2007, Olson filed his motion to dismiss based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12.  [Docket No. 55]. On May 24, 2007, Botno Ready Mix filed its motion to dismiss based on lack of personal jurisdiction.  [Docket No. 73].  On August 17, 2007,the Court requested additional briefing from all parties on the issue of subject matter jurisdiction, due to the inclusion of three nondiverse parties in the Amended Complaint.

## III.   SUBJECT MATTER JURISDICTION

### A.   Legal Standard

The federal district courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 551 (2005).  Federal district courts may not exercise jurisdiction absent a statutory basis.  Id.  In that regard, Congress has conferred to the district courts original jurisdiction over all civil

actions where the amount in controversy exceeds $75,000 and where the matter is between citizens of different states.  28 U.S.C. § 1332 (2005).

In order for a court to have diversity jurisdiction over a dispute based on 28 U.S.C. § 1332, each plaintiff must be diverse from, or have a different residence than, each defendant.  <u>Owen Equip. & Erection Co. vs. Kroger</u>, 437 U.S. 365, 373 (1978).  The presence of a nondiverse party automatically destroys subject matter jurisdiction when jurisdiction is based solely on diversity.  <u>Wisconsin Dep't of Corrections v. Schacht</u>, 524 U.S. 381, 389 (1998).  Therefore, diversity jurisdiction is not available when any plaintiff is a citizen of the same state as any defendant.  <u>Owen Equip.</u>, 437 U.S. at 374.

Lack of subject matter jurisdiction cannot be ignored by the court or waived by the parties.  <u>Hunter v. Underwood</u>, 362 F.3d 468, 476 (8th Cir. 2004).  A question of subject-matter jurisdiction may be raised by the court <u>sua sponte</u> at any time.  <u>Lundeen v. Canadian Pacific Ry. Co.</u>, 447 F.3d 606, 611 (8th Cir. 2006).

### B.   Diversity Jurisdiction

The Amended Complaint asserts the following basis for subject matter jurisdiction:

> Complete diversity existed among the original parties to this action at the time this action was commenced, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Based upon the foregoing, this Court has original and continuing jurisdiction in this matter pursuant to 28 U.S.C.A. § 1332(a)(1).

The general rule is that "[w]hether diversity of citizenship exists is determined at the time the suit is filed." Altimore v. Mount Mercy Coll., 420 F.3d 763, 768 (8th Cir. 2005) (citation omitted).  Thus, for example, if a defendant changes his state of citizenship after the lawsuit is filed, the court retains diversity jurisdiction.  However, there is a statutory restriction on the Court's ability to exercise diversity jurisdiction over newly joined, nondiverse defendants:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

Neither the Stipulation of Parties to Amend Pleadings to Join Additional Parties [Docket No. 33] nor the Order permitting amendment [Docket No. 35] specifies which Federal Rule of Civil Procedure permits Plaintiff's amendment and the related joinder of parties.  In either case, the joinder of nondiverse defendants was improper, because it was inconsistent with § 1332's requirement of complete diversity.  Grimes v. Mazda N. Am. Operations, 355 F.3d 566, 572 (6th Cir, 2004) ("The supplemental jurisdiction provision . . . states congressional intent to prevent original plaintiffs . . . from circumventing the requirements of diversity."); H.R. Rep. No. 101-734, at 29 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6875 (explaining that the purpose of § 1367(b) is to prevent "plaintiffs [from being

able] to evade the jurisdictional requirement of 28 U.S.C. § 1332 by the simple expedient of naming initially only those defendants whose joinder satisfies section 1332's requirements and later adding claims not within original federal jurisdiction against other defendants who have intervened or been joined on a supplemental basis.").  Plaintiff admits, and the parties who briefed the issue agree, that three nondiverse parties were misjoined as direct Defendants in this action and, as a result, complete diversity no longer exists.

A district court may cure a jurisdictional defect by removing a dispensable nondiverse party from a suit.  See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 572 (2004).  Rule 21 of the Federal Rules of Civil Procedure also establishes that misjoinder of parties does necessitate the dismissal of the action:

Misjoinder of parties is not ground for dismissal of an action.  Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.  Any claim against a party may be severed and proceeded with separately.

As joint tortfeasors, the nondiverse defendants to the present action are permissive, not indispensable, parties.  Fed. R. Civ. P. 19(a) advisory committee's note ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."); Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." (citations omitted)).  Under the circumstances, the Court exercises its discretion

to dismiss without prejudice the claims against the three nondiverse parties:
Olson, Botno, and Northwest.

### C. Federal Question Jurisdiction

Plaintiff attempts to salvage his claims against the three nondiverse parties
by asserting that the Court has subject matter jurisdiction based on a federal
question.  A claim is normally considered to have arisen under federal law, as
would provide a federal court with subject matter jurisdiction, if a federal cause of
action appears on the face a well-pleaded complaint, Ogala Sioux Tribe v. C & W
Enterprises, Inc., 487 F.3d 1129, 1131 (8th Cir. 2007) (citation omitted), or if the
plaintiff's right to relief necessarily depends on resolution of a substantial question
of federal law.  McNeill v. Franke, 171 F.3d 561, 564 (8th Cir. 1999).

Plaintiff acknowledges that he has not pled federal-question jurisdiction.
Instead, Plaintiff claims that various allegations in his original Complaint and his
Amended Complaint "implicate the application and interpretation of Title 49,
Chapter III, Subchapter B, Federal Motor Carrier Safety Regulations . . . ."  (Pl.
Brief at 8.)  According to Plaintiff, whether or not all Defendants named in the
Amended Complaint violated various sections of the Federal Motor Carrier Safety
Regulations is a dispute that must be resolved in the present action.

The mere presence of a federal issue in a state cause of action does not
automatically confer federal-question jurisdiction.  McNeill, 171 F.3d at 564.
Here, Plaintiff's right to relief on his personal injury claim does not necessarily
depend on the resolution of the dispute regarding the Safety Regulations, nor do
Plaintiff's allegations appear to raise a substantial question of federal law.  Id.

Therefore, Plaintiff's attempt to salvage his Amended Complaint based on federal-question jurisdiction fails.

## IV.    PERSONAL JURISDICTION

If the Court's lack of subject matter jurisdiction were not enough to dismiss the claims against Defendants Olson and Botno, the Court finds that it also lacks personal jurisdiction over these two defendants.  In their motion papers, Botno and Olson assert that they lack sufficient contacts with Minnesota to establish either general or specific jurisdiction over their persons.  The Court agrees.

### A.    Legal Standard

Although the plaintiff has the ultimate burden of proof on the issue of personal jurisdiction,

> [t]o defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction.  If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted).

"A two-step inquiry is employed when determining whether a federal court has jurisdiction over a non-resident party: (1) whether the facts presented satisfy the forum state's long arm-statute, and (2) whether the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process."  Soo Line R.R. Co.

v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citation

omitted).  "The Minnesota long-arm statute extends jurisdiction to the fullest

extent permitted by the due process clause."  Id. (citation omitted).  Thus, the

Court need only decide whether personal jurisdiction is consistent with federal

due process.  Id.

>    The Eighth Circuit has explained:

>    The due process clause requires there be minimum contacts
>    between the defendant and the forum state before the forum state
>    may exercise jurisdiction over the defendant.  Sufficient contacts
>    exist when the defendant's conduct and connection with the forum
>    State are such that he should reasonably anticipate being haled into
>    court there, and when maintenance of the suit does not offend
>    traditional notions of fair play and substantial justice.  In assessing
>    the defendant's reasonable anticipation, there must be some act by
>    which the defendant purposefully avails itself of the privilege of
>    conducting activities within the forum State, thus invoking the
>    benefits and protections of its laws.

Soo Line R.R. Co., 950 F.2d at 528-29 (citations omitted).  The Eighth

Circuit has further held that:

>    The purposeful availment requirement ensures that a defendant will
>    not be haled into a jurisdiction solely as a result of random,
>    fortuitous, or attenuated contacts or of the unilateral activity of
>    another party of a third person.  Jurisdiction is proper, however,
>    where the contacts proximately result from actions by the defendant
>    himself that create a substantial connection with the forum State.

Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693-94 (8th Cir. 2003) (citations

omitted).

>    The Court examines five factors to determine whether the exercise of

jurisdiction comports with due process:

(1) the nature and quality of the contacts with the forum state;

(2) the quantity of contacts with the forum;

(3) the relation of the cause of action to these contacts;

(4) the interest of the forum state in providing a forum for its residents; and

(5) the convenience of the parties.

Soo Line R.R. Co., 950 F.2d at 529 (citation omitted). The first three considerations are primary factors, whereas the latter two considerations are secondary factors. Id.

Finally, the Court may exercise specific or general jurisdiction over a party. "Where a court premises jurisdiction over a defendant upon the relationship between the plaintiff's claims and the defendant's forum state activities, it has been said that the court is exercising 'specific jurisdiction.'" Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991) (citation omitted). When the plaintiff's claim is not related to the defendant's contacts with the forum, a court can exercise general jurisdiction based on the defendant's "continuous and systematic" contacts with the forum. Id. at 1280-81. In the present case, only the issue of specific jurisdiction is before the Court; no party argues that the Court has general jurisdiction. Thus, the Court's analysis focuses solely on specific jurisdiction.

**B.     Jurisdiction as to Defendant Olson**

**1.     Olson's Contacts with Minnesota**

Olson is a resident of Bottineau County, North Dakota. (Olson Aff. ¶ 1.) He has never worked or lived in Minnesota; nor has he ever owned any real property or had a bank account in Minnesota. (Id. ¶¶ 2, 13.) Besides the

occasional purchase of personal property, such as the truck in question, Olson did not own, use or possess any personal property in Minnesota.  (<u>Id</u>. ¶ 14.)  All personal property purchased in Minnesota was used exclusively in North Dakota.  (<u>Id</u>. ¶ 12.)  He never sold ready mix in Minnesota because the Minnesota border was approximately 150 miles from his former place of business.  (<u>Id.</u> ¶ 11.)  Nor did Olson sell any other products in Minnesota, and he was never in the business of selling trucks or other kinds of equipment.  (<u>Id.</u> ¶ 12.)

In 1997, Olson purchased the truck from Dickie Equipment Company in Dodge Center, Minnesota for his ready mix business.  (Compl. ¶ 5.)  The truck was used to haul ready mix concrete around Bottineau, North Dakota for approximately 3 months in 1998.  (<u>Id.</u> ¶ 8.)  Olson has never sold any products in Minnesota, nor has he sold any other trucks or equipment in Minnesota.  (<u>Id.</u> ¶ 11.)  Additionally, he was only in Minnesota to pick up the truck he purchased from Dickie and drive it back to North Dakota.  (<u>Id.</u> ¶ 15.)  The truck involved in the incident was never licensed in Minnesota; nor were the tires ever worked on or repaired in Minnesota when Olson owned it.  (<u>Id.</u>)

Olson has never had any direct contact with Johnson.  (<u>Id.</u> ¶ 16.)   In the summer of 1998, he sold the truck, along with all assets of his company, to Botno in North Dakota.  (<u>Id.</u> ¶ 9.)

### 2.    Nature, Quality and Quantity of the Contacts

Olson argues Minnesota cannot exercise specific personal jurisdiction over him because none of the provisions of Minnesota's long arm statute, Minn. Stat.

§ 543.19, subd. 1, apply to him.  The statute provides that personal jurisdiction arises if a nonresident individual or foreign corporation:

> (a) owns, uses, or possesses any real or personal property situated in this state; or
>
> (b) transacts any business within the state; or
>
> (c) commits any act in Minnesota causing injury or property damage; or
>
> (d) commits any act outside Minnesota causing injury or property damage in Minnesota, subject to [certain] exceptions . . .

Id.

First, it is undisputed that Olson does not own, use or possess any real or personal property in Minnesota, and all property he purchased in Minnesota, such as the truck in question, was used exclusively in North Dakota.  Second, Olson argues that Johnson's tort claim against does not arise out of any business transaction between Johnson and Olson in Minnesota.  The purchase of the truck from a Minnesota equipment dealership was simply fortuitous.  Third, Olson did not commit any act in Minnesota that caused Johnson's truck rollover accident in North Dakota.  Fourth, there is no evidence that Olson committed any act outside Minnesota that caused injury in Minnesota, because Johnson's injury occurred in North Dakota.

Further, Olson claims he is not in the business of selling trucks in Minnesota, and never sold any of his company's cement product in Minnesota.  In fact, he sold the truck in question to another local North Dakota business, Botno, as part of the sale of his business assets.

Johnson responds that Olson is subject to specific personal jurisdiction in Minnesota under Minnesota Statute § 543.19, subdivision 1(b), the transaction of business within the state of Minnesota.  Johnson concedes that Olson is not subject to general jurisdiction or to specific jurisdiction based on ownership, use, or possession of real or personal property situated in Minnesota, commission of any act in Minnesota causing injury or property damage, or commission of an act outside Minnesota causing injury or property damage in Minnesota.

Johnson argues that Olson purposefully availed himself of the benefits and protections of Minnesota law by purchasing the truck from Dickie, in Dodge Center, Minnesota, in the fall of 1997.  He also argues that Olson placed the truck back into the stream of commerce by selling the truck to Botno during the summer of 1998.

The nature, quality, and quantity of Olson's contacts do not weigh in favor of jurisdiction.  Olson only had one contact with Minnesota – a single purchase of the truck from a Minnesota dealership and transport of the truck to North Dakota for use exclusively in North Dakota.  There is no evidence that this contact was lengthy or involved.

### 3.    The Relation of the Cause of Action to these Contacts

Olson notes that Johnson asserts that specific jurisdiction is based only on Olson's contract to purchase the truck in Minnesota.  Olson argues that Johnson's personal injury claim is unrelated to the purchase contract between Olson and Dickie.

"For purposes of determining whether personal jurisdiction over a foreign defendant exists, there is a distinction between contacts by purchasers of goods and services from Minnesota residents and contacts by sellers of goods and services to Minnesota residents." <u>Marshall v. Inn on Madeline Island</u>, 610 N.W.2d 670, 675 (Minn. Ct. App. 2000) (citations omitted).  A court is more likely to find jurisdiction when the defendant sells goods to Minnesota residents than when he buys goods from Minnesota residents.  <u>Id.</u>  Here, Olson did not sell anything to a Minnesota resident; he merely bought one truck from a Minnesota dealer.  Although that sale did involve a contract with a Minnesota resident, "entering into a contract with a Minnesota resident can justify the exercise of specific jurisdiction but only where the dispute involves the contract." <u>Marshall v. Inn on Madeline Island</u>, 610 N.W.2d 670, 676 (Minn. Ct. App. 2000) (citation omitted).  When a foreign defendant's only contact with Minnesota is a contract for sale of its product line to a Minnesota company and actions related to the that contract, the contacts are "clearly insufficient" to support jurisdiction over a lawsuit for injuries suffered from the product that was manufactured and sold after the product line contract was completed.  <u>Morris v. Barkbuster, Inc.</u>, 923 F.2d 1277, 1282 (8th Cir. 1991).

Olson's single contact with Minnesota is marginally related to Johnson's claim against him in that Olson's contract involved the truck and tire that injured Johnson.  However, this relation is tenuous.  Olson's contact was not with Johnson.  Olson's purchase of the truck from Dickie is not an action that could support Johnson's negligence claim.  Rather, Johnson alleges Olson was negligent

by having knowledge of the puncture repair and retread on the tire and directing the tire to be mounted on the truck.  If Olson directed a defective tire to be mounted on the truck, that action occurred after his sales contract with Dickie's and appears unrelated to that contract.

### 4.  The Interest of the Forum State in Providing a Forum for Its Residents

Minnesota has an interest in providing a forum for an injured resident. Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997).  However, the accident occurred in North Dakota, and Johnson has never been a resident of Minnesota. This factor weighs against the exercise of personal jurisdiction.

### 5.  The Convenience of the Parties

"A plaintiff normally is entitled to select the forum in which it will litigate. Northrup King Co. v. Compania Productora Semillas Algodoneras, 51 F.3d 1383, 1389 (8th Cir. 1995).  However, it would be an inconvenience to Olson to drive to Minnesota.  Also, Johnson is a resident of North Dakota, the Plaintiff's employer is located in North Dakota, and Olson is a resident of North Dakota.  The Court has no evidence regarding the location of witnesses or evidence in this matter; although, since the accident occurred in North Dakota, it is likely that many of the witnesses and much of the evidence is located there.  Overall, this factor weighs against the Court's exercise of personal jurisdiction.

### 6.  Result

This Court does not have personal jurisdiction over Defendant Olson. Olson only had one limited contact with Minnesota—the purchase of the truck at

issue from a Minnesota dealership.  This contact was not with Plaintiff and is

unrelated to this lawsuit.  Minnesota does not have a strong interest is providing a

forum because Plaintiff is not a Minnesota resident and the accident did not occur

in Minnesota.  Finally, it would be inconvenient for the lawsuit to be based in

Minnesota when both Plaintiff and Olson are North Dakota residents, and the

accident occurred in North Dakota.

### C.     Jurisdiction as to Defendant Botno

Johnson admits that Botno is not subject to general jurisdiction, or to

jurisdiction under subdivisions 1(a), (c), or (d) of Minnesota Statute § 543.19.

Rather, Johnson argues that Botno is subject only to specific jurisdiction due to its

transaction of business within Minnesota by selling the truck to Welsh.

Johnson also argues that Federal Rule of Civil Procedure 19 requires

joinder of Botno in order to assure that complete relief will be granted.  As

previously explained, Rule 19 does not create personal jurisdiction and only

permits joinder if personal jurisdiction already exists, so it is not relevant to the

motions currently before the Court.

### 1.     Botno's Contacts with Minnesota

Botno purchased the truck and all assets of the company from Olson, in

North Dakota, in the summer of 1998.  (Mikkelson Aff. ¶ 4.)

Monte Mikkelson is the Vice President and one of the partners of Botno

Ready Mix, which is a limited liability partnership organized under the laws of

North Dakota.  (Mikkelson Aff. ¶ 3.)  He is also a resident of Bottineau County,

North Dakota.  (<u>Id.</u> at ¶ 1.)  Mikkelson has never lived or worked in Minnesota. (<u>Id.</u> ¶ 2.)

Botno is in the business of delivering concrete.  (Mikkelson Aff. ¶ 5.)  Botno did not sell ready mix concrete or other product in Minnesota; nor did it ever sell any other trucks or equipment besides the truck in question in Minnesota.  (<u>Id.</u> ¶ 9.)  Botno was never in the business of selling trucks or other equipment.  (<u>Id.</u> ¶ 9.)  While owned by Botno, the truck was used in to deliver concrete to customers within a 50-mile radius of the city of Bottineau, North Dakota, and never delivered ready mix concrete to Minnesota.  (<u>Id.</u> ¶¶ 5, 8.)  Botno has never had a place of business, employees, or a bank account in Minnesota.  (<u>Id.</u> ¶ 10.) Besides the occasional purchase of personal property, such as the truck in question, Botno did not own, use, or possess any personal property in Minnesota. (<u>Id.</u> ¶ 11.)  Botno never had any direct contact with Plaintiff Johnson.  (<u>Id.</u> at ¶ 15.)

Botno sold the truck to Welsh in Dodge Center, Minnesota in February of 2001.  (Mikkelson Aff. ¶ 7.)  On February 2, 2001, Botno sold the truck at issue to Welsh, located in Dodge Center, Minnesota, as a trade-in to purchase a 1993 truck from Welsh.  (Lorenz Dep. 19-20, Ex. A to Burgan Aff.)  One of Botno's four partners, Steve Lorenz, negotiated the terms of the trade-in with Welsh and hauled the truck at issue from Bottineau, North Dakota, to Dodge Center, Minnesota, on another truck.  (Lorenz Dep. 38-40.)  Other than transporting the truck by flatbed to Dodge Center, Botno used the truck exclusively within North Dakota.  (Mikkelson Aff. ¶ 9.)

## 2.    Nature, Quality and Quantity of the Contacts

Johnson argues that, by selling the truck to a Welsh, a Minnesota company, Botno placed the truck into the stream of commerce and purposefully availed itself of the benefits and protections of Minnesota law.  He also asserts that Botno's single contact with Welsh establishes sufficient minimum contacts because Botno negotiated the terms of the trade in.  See KSTP-FM, LLC v. Specialized Commc'ns, Inc., 602 N.W.2d 919, 924 (Minn. Ct. App. 1999) (noting that "a single sale" is more likely to support personal jurisdiction if "the nonresident in some way solicited the sale or actively engaged in negotiating its terms").

Johnson also argues that Botno is subject to jurisdiction in Minnesota under stream-of-commerce theory.  "Personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state."  Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003) (citations omitted).   The stream of commerce theory does not appear to apply to Botno is not a seller or distributor of trucks or tires.  Rather, it engaged in a single trade-in of the truck with a dealer in Minnesota.  Stream-of-commerce personal jurisdiction theory is based on the rationale that "it is only reasonable for companies that distribute allegedly defective products through regional distributors in this country to anticipate being haled into court by plaintiffs in their home states."  Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 615 (8th Cir. 1994).  Botno did not use a distribution system to sell trucks or tires.  More importantly, its introduction of the truck into Minnesota did not lead to a sale to a Minnesota resident at all.  Rather, eventually, the truck made its way

back to North Dakota for sale to Plaintiff's North Dakota employer, and Botno's

business transaction in Minnesota had no connection to the ultimate accident and

claim occurring in North Dakota.  Finally, Botno had no control over where the

truck went after Botno sold it to Welsh.

It is true that a foreign defendant's action of entering the forum state to

deliver a product to the plaintiff and complete performance under a contract

negotiated between the two can give rise to personal jurisdiction.  Papachristou v.

Turbines, Inc., 902 F.2d 685, 686-87 (8th Cir. 1990) (en banc).  However, that

act is only sufficient when the cause of action itself based on the breach of that

very contract, of which delivery to the forum state was "material term of the

contract," and the plaintiff is the other party to that contract.  Id.  In this case,

Botno's travel into Minnesota to deliver the truck to Welsh and complete a sales

contract with Welsh might have been sufficient to establish personal jurisdiction

in a breach of contract action asserted by Welsh.  However, this single contact is

not related to Johnson's tort claim against Botno.

### 3.    The Relation of the Cause of Action to these Contacts

Botno argues that its contract and contact with Welsh is unrelated to

Johnson's current tort claim against it.  Also, Botno was never in the business of

selling trucks.  It never used the truck in Minnesota, apart from transporting it on

a flatbed truck to Welsh.

Johnson asserts that his cause of action is related to Botno's sale of the

truck to Welsh in February 2001 because if a dispute had arisen between Welsh

and Botno over the terms of the sale or the condition of the truck, Botno would

have reasonably anticipated being haled back into a Minnesota court to resolve

the dispute.  This argument appears to miss the point.  If Welsh were the plaintiff here, suing over the contract terms, then clearly, Botno's single contact with Minnesota would be related to the cause of action and would likely support personal jurisdiction.  However, that is not the case.  Johnson, not Welsh, is asserting the claim, and Botno had no contact with Johnson.  Moreover, Johnson's claim is related to Botno's actions in caring for the truck during the time it owned and used in North Dakota – i.e., possibly mounting the punctured or retread tire onto the axle.  These actions are unrelated to Johnson's contact with Welsh.

### 4.    The Interest of the Forum State in Providing a Forum for Its Residents

Minnesota has an interest in providing a forum for an injured resident. Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997).  However, the accident occurred in North Dakota, and Johnson has never been a resident of Minnesota. This factor weighs against the exercise of personal jurisdiction.

### 5.    The Convenience of the Parties

It would be an inconvenience to Botno to come to Minnesota to defend this case.  Also, as noted above, Johnson is a resident of North Dakota, the Plaintiff's employer is located in North Dakota, and Botno is a North Dakota limited liability partnership.  Information regarding the location of witnesses or evidence in this matter is lacking; although, since the accident occurred in North Dakota, it is probable that many of the witnesses and much of the evidence is located there. Overall, this factor weighs against the exercise of personal jurisdiction.

### 6.   Result

This Court does not have personal jurisdiction over Defendant Botno. Botno only had one limited contact with Minnesota: selling the truck to Welsh and transporting the truck to Welsh.  This business transaction is not related to Johnson's claim against Botno.  Although the contact did introduce the truck into Minnesota, the truck and tire then returned to North Dakota where it was driven be Johnson and involved in the accident.  Botno is not a manufacturer or distributor of trucks or tires that utilized a distribution system to spread its product across the country.  Additionally, Minnesota does not have a strong interest in this case and the forum is not convenient because Plaintiff is not a Minnesota resident and the injury occurred in North Dakota.

### D.   Personal Jurisdiction and Rule 19

Plaintiff's counsel has placed himself in the unenviable position of having to argue both sides of a single issue in his attempt to pass these jurisdictional hurdles.  In his briefing on the issue of subject matter jurisdiction, Plaintiff argued convincingly that Olson, Botno, and Northwest are not necessary parties to the lawsuit and, therefore, the court could dismiss his claims against the nondiverse defendants.  Here, Plaintiff asserts that, under Federal Rule of Civil Procedure 19, which governs joinder, Olson and Botno must be joined in this lawsuit because they are subject to service of process and, in their absence, complete relief cannot be accorded among the remaining parties.

Johnson misconstrues Rule 19.  Federal Rule of Civil Procedure 19 does not create personal jurisdiction, so it is not relevant in this case.  See, e.g., E.E.O.C. v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005) ("Rule 19(a) sets forth

three circumstances in which joinder is not feasible: when venue is improper, <u>when the absentee is not subject to personal jurisdiction</u>, and when joinder would destroy subject matter jurisdiction.") (emphasis added) (citations omitted); <u>PaineWebber, Inc. v. Cohen</u>, 276 F.3d 197, 200 (6th Cir. 2001) ("If the party is deemed necessary for the reasons enumerated in Rule 19(a), the court must next consider whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction.") (citations omitted); <u>Sch. Dist. of Kansas City, Mo. v. State of Mo.</u>, 460 F. Supp. 421, 436 (W.D. Mo. 1978) ("Rule 19 was never intended to be a plaintiff's weapon to gain personal jurisdiction over original parties.").

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.   Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** as to Defendants Jerry D. Olson, Botno Ready Mix, L.L.P., and Northwest Tire, Inc.

2.   Defendant Jerry D. Olson and Defendant Botno Ready Mix, L.L.P.'s motions to dismiss for lack of personal jurisdiction [Docket Nos. 55 and 73] are **GRANTED**.

Dated: October 30, 2007

BY THE COURT:

s / Michael J. Davis
The Honorable Michael J. Davis
United States District Court Judge